**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| XAVIER VENIAL CLAY, | ) | |
| | ) | Civil Action No. 14 – 736 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JON FISHER and THE ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |


## <u>MEMORANDUM OPINION</u>

Before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner Xavier

Venial Clay ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 3.) Petitioner challenges his

judgment of sentence of forty-six to ninety-two years of imprisonment, entered on December 16,

2009, in the Court of Common Pleas of Allegheny County, Criminal Division, imposed after he

was convicted of multiple offenses stemming from four separate carjacking incidents. For the

following reasons, Petitioner's application for federal habeas corpus relief will be denied.

### A.  <u>Background</u>

The pertinent factual and procedural history of this case, as summarized by the

Pennsylvania Superior Court in its Memorandum Opinion dated August 11, 2011, are as follows:

> Appellant pled guilty at criminal information CC 2009-477 to robbery of
> a motor vehicle, robbery with serious bodily injury, person not to possess a
> firearm, possession of a firearm without a license, and receiving stolen property,
> all charges arising from a carjacking involving Richard G. on December 12, 2008.
> He also pled guilty at CC 2009-578 to charges of robbery – serious bodily injury,
> persons not to possess a firearm, and carrying a firearm without a license, arising
> from the December 18, 2008 carjacking involving Karen L.  At CC 2009-579,

Appellant pled guilty to robbery – serious bodily injury, robbery of a motor vehicle, persons not to possess a firearm, carrying a firearm without a license, and recklessly endangering another person, arising from a December 19, 2008 car hijacking involving Alina D. A CC 2009-3970, Appellant was convicted at a non-jury trial of robbery, robbery of a motor vehicle, aggravated assault, two firearms violations, receiving stolen property, fleeing or attempting to elude an officer, and several licensing and motor vehicle violations arising from the carjacking and shooting of Kory M. The specific facts of the latter case are pertinent to our review.

The record from the non-jury trial established that on December 19, 2008, at approximately 7:00 p.m., twenty-three-year-old Kory M. was leaving his Bloomfield home. Kory M. entered his silver 2004 Toyota Solara that was parked on the street and fastened his seatbelt. At that moment, the interior light of his vehicle came on indicating that a door was open and he noticed that someone was standing beside the car. Kory M. leaned through the window of the car to see who was there and noticed a person who was attempting to hide his face. Kory proceeded to remove his seatbelt when he was shot in the left jaw. Despite his injury, he managed to exit the vehicle, and the assailant fled to Kory M.'s car. Kory walked across the street where his neighbors came to his aid. Paramedics arrived and transported him to Presbyterian Hospital where he was treated for a fractured jaw, a broken clavicle, and damage to his vocal cords. He had two surgeries and remained in the hospital until January 7, 2009.

Kory M. did not see the face of the shooter; he could only see him from the chest down. The shooter did not speak. However, Kory was able to describe the clothing worn by the perpetrator: a black tossle cap, green jacket, and a white shirt or sweatshirt underneath. Pittsburgh Police Detective Vonzale Boose testified that he was involved in the investigation of the shooting and robbery. He was traveling inbound on Chartiers Avenue in the West End section of Pittsburgh when he observed a silver Toyota Solara heading outbound that matched the description of a vehicle reported stolen earlier that evening. He made a U-turn in his unmarked vehicle and followed the silver car while communicating to radio dispatch that he believed it to be the same vehicle taken in the Bloomfield robbery. After receiving confirmation that he was following the stolen vehicle, the detective called for assistance and continued to follow the car on Route 51. He testified that the vehicle continually stopped and started, and then started off at a high rate of speed and attempted to elude police. A marked unit joined the chase, which ended on Grandview Avenue. Detective Boose hastened to that location where he observed a black male dressed all in black running toward him. The detective repeatedly identified himself as a Pittsburgh police officer, and ordered the suspect to the ground at gunpoint. Detective Boose and Officer Richard Yochus placed the suspect, later identified as Appellant, in custody.

Detective Albert Cecconelle testified that Appellant was brought into the homicide squad witness room and read his ***Miranda*** warnings. Appellant signed the warnings form and agreed to speak with detectives. Appellant told detectives that he was involved in an altercation with the victim on Edmond Street, that he had fired a handgun, and taken the victim's vehicle. A statement was recorded and Appellant stipulated at trial that the transcript that the District Attorney's office had prepared was a verbatim transcription of the oral interview. In the statement, Appellant admitted shooting and robbing Kory M. and attempting to elude police. He also indicated that he left the gun used in the robbery in the vehicle. The detective testified that Appellant did not have a license to carry a firearm and that his driving privileges were suspended at the time of the robbery.

Detective John Adams, who was assigned to the Mobile Crime Unit of the Pittsburgh Police, processed the vehicle for fingerprints and other evidence at the garage. He confirmed that the vehicle belonged to Kory M. He also recovered a Ruger .45 caliber pistol from the right front passenger seat, as well as a black mask, a plastic bottle, a pack of cigarettes, and a cellular phone. No latent prints were obtained from the weapon. Detective Adams also was involved in the processing of the scene of the carjacking. He retrieved a .45 shell casing on the sidewalk in front of 613 Edmond Street, which was packaged and sent to the laboratory for latent print processing. The bullet removed from the victim was retrieved and processed. The parties stipulated at trial that crime laboratory testing confirmed that the same Ruger pistol that was recovered from the front passenger seat of the vehicle discharged the bullet and cartridge case.

At the close of the evidence, the court acquitted Appellant of attempted murder and convicted him of robbery, aggravated assault, robbery of a motor vehicle, persons not to possess, firearms not to be carried without a license, receiving stolen property, and fleeing or attempting to elude an officer. Appellant was adjudged guilty of driving while operating privileges were suspended or revoked and making an improper turn, but not guilty of driving without a license. On December 16, 2009, when Appellant entered guilty pleas to the remaining three criminal informations, he was sentenced on all charges to forty-six to ninety-two years in prison.

On December 22, 2009, Appellant filed a *pro se* motion to withdraw his guilty plea alleging ineffective assistance of counsel and, on February 5, 2010, Appellant filed a counseled amended post-sentence motion. On April 14, 2010, after a hearing before Judge Lester Nauhaus, counsel was permitted to withdraw. Present counsel, appointed on April 16, 2010, filed a second amended post-sentence motion on May 5, 2010. Judge Nauhaus denied the motions after an evidentiary hearing on May 13, 2010. Appellant timely appealed to [the Superior] Court and filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Judge Nauhaus authored a Rule 1925(a) opinion on December 21, 2010 . . . .

(Resp't Ex. 24, ECF No. 12-7 at pp.2-6.)

On August 11, 2011, the Pennsylvania Superior Court denied relief in an unpublished Memorandum Opinion. (Resp't Ex. 24, ECF No. 12-7 at pp.1-18.) Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on August 31, 2011, (Resp't Ex. 25, ECF No. 12-7 at pp.19-55), and that petition was denied by Order dated January 19, 2012, (Resp't Ex. 28, ECF No. 12-8 at p.5).

On February 24, 2012, Petitioner filed a counseled petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"). (Resp't Ex. 29, ECF No. 12-8 at pp.6-30.) After issuing a Notice of Intent to Dismiss the Petition, (Resp't Exs. 31, 32, ECF No. 12-10 at pp.1-3, 4-6), Judge Nauhaus issued an Order dismissing the PCRA petition on September 14, 2012, (Resp't Ex. 33, ECF No. 12-10 at pp.7-8). Petitioner appealed, (Resp't Ex.34, ECF No. 12-10 at pp.9-10), and the Superior Court affirmed the dismissal of the PCRA petition in an unpublished Memorandum Opinion dated March 6, 2013, (Resp't Ex. 39, ECF No. 12-13). Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on March 29, 2013, (Resp't Ex. 40, ECF No. 12-14), and that petition was denied on September 12, 2013, (Resp't Ex. 42, ECF No. 14-1 at p.4).

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 10, 2014. (ECF No. 3.) The Petition raises the following four claims:

1. Petitioner was denied due process where the Commonwealth did not prove each and every element of the crimes charged for aggravated assault.

2. The sentencing court abused its discretion by excessively and unreasonably sentencing Petitioner to consecutive sentences violating Petitioner's right to be free from cruel and unusual punishment.

3. Petitioner was denied his Sixth Amendment right to counsel when trial counsel induced Petitioner into believing that if he pleaded guilty he would receive at 10-20 year sentence.

4. Petitioner was denied his Sixth Amendment right to counsel where counsel failed to file a motion to suppress his confession when he was not provided timely *Miranda* warnings.

Respondents filed their Answer to the Petitioner on August 14, 2014. (ECF No. 12.)

B. **Standard of Review**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was *contrary to,*[1] *or involved an unreasonable application of,*[2] *clearly established Federal law, as determined by the Supreme Court of the United States*; or

---

[1] "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.' Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. *See* Kane v. Garcia Espitia, 546 U.S. 9 (1995)." Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[2] "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.' Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v.

5

(2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*[3]

(Emphasis added).  Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), under 28 U.S.C. § 2254(e)(1) a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted by "clear and convincing evidence."  *See*, *e.g.*, Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).  *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

---

Smith, 539 U.S. 510, 519, 520 (2003)).  For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.'  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted).  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)).  Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ.  Andrade, 538 U.S. at 75."  Roundtree, 640 F.3d at 537 (parallel citations omitted).

[3] "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record.  *See* Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); *see also* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.').  Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication.  Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)."  Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

6

## C. **Discussion**

### 1. **Claim one: Petitioner was denied due process where the Commonwealth did not prove each and every element of the crimes charged for aggravated assault.**

Petitioner first claims that he was denied due process because the Commonwealth did not prove that he acted with the intent to inflict serious bodily injury.[4] In the state courts, Petitioner did not raise this claim as one of due process. Instead, he argued that his conviction for aggravated assault was against the weight of the evidence and that the evidence was insufficient to support his conviction. *See* Resp't Ex. 21 at ECF No. 12-4 at p.43. The Pennsylvania Superior Court disposed of Petitioner's weight and sufficiency claims as follows:

> As to the aggravated assault conviction, while Appellant told police that it was not his primary intention to hurt Kory M. and that he acted in self-defense, the fact finder was free to disbelieve Appellant's self-serving account. Furthermore, the defense of self-defense is not available to an armed aggressor who provoked the situation. Moreover, when one argues self-defense, one is virtually conceding the intent to harm the other. Appellant admitted that as he approached the victim's car door, he pulled his gun on the victim. When he perceived resistance, he shot into the passenger compartment of the vehicle, striking the victim in the jaw. We see no palpable abuse of discretion that would warrant reversal herein.
>
> . . . . Appellant contends that he "was merely defending himself" when he shot Kory M., and that he had no intention of hurting him, nor did he do so recklessly.
>
> . . . . In the instant case, the only direct evidence of Appellant's intent was his statement to police to the effect that he did not intend to shoot the victim. However, evidence of his intent to inflict serious bodily injury may be gleaned from the other circumstances surrounding the attack on the victim.
>
> Appellant's counsel conceded at trial that Appellant acted recklessly. . . . . In the instant case, Appellant, while standing at the door of the victim's car, pointed his gun at the victim and then fired it into the passenger compartment of the vehicle. Such evidence of recklessness is sufficient to sustain the conviction

---

[4] This claim is limited to Petitioner's conviction at CC 200903970 regarding victim Kory M.

for aggravated assault where, as here, Appellant could reasonably have anticipated that serious bodily injury would result.

Furthermore, Appellant's argument that he acted in self-defense in firing his gun undermines his position that he lacked the requisite intent for aggravated assault. Even if one were to believe that Appellant did not intend to cause serious bodily injury when he approached Kory M.'s car, one court reasonably infer from the ensuing events that he acted intentionally or recklessly when faced with what he perceived to be an uncooperative victim. Appellant described the scene. The victim was "in the seat belt. He was, he was either leaving or just pulling up. I don't know. But me having the door open, I told him to get out the car. He's like, he, he yelled 'no,' as if he wasn't going to cooperate, but he was moving fast as if. He was still looking at me but, he was reaching for his seatbelts trying to get out the car at the same time." When Kory M. "reached for his seatbelt I thought he was reaching for a gun or something."

Rather than retreat when faced with resistance, Appellant fired his weapon into the passenger compartment of the vehicle. One could reasonably infer that he did so intending to stop Kory M. even if it resulted in serious bodily injury. Hence, we find no merit to Appellant's claim that there was sufficient evidence that he intentionally, knowingly, or recklessly caused serious bodily injury to support the conviction for aggravated assault.

(Resp't Ex. 24, ECF No. 12-7 at pp.11-14) (internal citations omitted).

First, Petitioner's claim regarding the weight of the evidence is not cognizable in federal habeas because it raises solely an issue of state law. Tibbs v. Florida, 457 U.S. 31, 37-45 (1982) (weight of the evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction; *see also* Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]") In conducting habeas review for a state prisoner such as Petitioner, this Court is limited to deciding whether his state conviction violated the Constitution of the United States, 28 U.S.C. § 2254(a), and may not rule on issues of purely state-law error. *See*, *e.g.*, Estelle v. McGuire, 502 U.S. 62,

67-68 (1991) (federal courts may not "reexamine state court determinations on state law questions").

However, Petitioner's claim regarding the sufficiency of the evidence does express a federal constitutional claim. *See* Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009) (quoting Jackson v. Virginia, 443 U.S. 307, 321 (1979) ("it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim" and that "it follows that such a claim is cognizable in a federal habeas corpus proceeding."), and citing Fiore v. White, 531 U.S. 225, 228-29 (2001) (per curiam) ("We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt.")).

The Superior Court's disposition of Petitioner's sufficiency of the evidence claim is entitled to deference under the standard of review set forth at 28 U.S.C. § 2254(d), as amended by the AEDPA. *See* section B, *supra*. The "clearly established Federal law" in which to analyze the sufficiency of the evidence claim is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In a habeas corpus proceeding, where the sufficiency of the evidence is in contention:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt . . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir. 1997) (quoting Jackson v. Virginia, 443 U.S. at 318-19) (internal citations and quotes omitted). *See also* Robertson, 580 F.3d at 164; Orban v. Vaughn, 123 F.3d 727, 731-33 (3d Cir. 1997).

In adjudicating this claim, the Superior Court applied the Pennsylvania equivalent of the Jackson v. Virginia standard. *See* Resp't Ex. 24, ECF No. 12-7 at p.11 (citing Commonwealth v. Johnson, 818 A.2d 514, 516 (Pa. Super. 2003)). *See also* Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). The Superior Court set forth an extensive review of the evidence to explain why a rational finder of fact could have found beyond a reasonable doubt each of the elements of aggravated assault and further explained why it found no merit to Petitioner's self-defense theory. *See*, *supra*. The Superior Court's adjudication withstands AEDPA's standard of review, and it cannot be concluded that the Commonwealth did not submit sufficient evidence to support Petitioner's aggravated assault conviction under the standards presented by Jackson v. Virginia. Therefore, this claim does not warrant habeas relief.

**2. Claim two: The sentencing court abused its discretion by excessively and unreasonably sentencing Petitioner to consecutive sentences violating Petitioner's right to be free from cruel and unusual punishment.**

Petitioner's second claim is that his consecutive sentences created an excessive sentence that violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. This claim, however, was not presented to the state courts in its current form. Instead, in the state courts Petitioner argued that his sentence was "manifestly excessive" in light of the dictates of 42 Pa. C.S.A. § 9721, which requires a sentencing court to consider several factors in fashioning a sentence. Petitioner did not place the state courts on notice that he was asserting a federal claim. *See* Picard v. Connor, 404 U.S. 270, 277-78 (1971) (a state habeas petitioner must present the "substantial equivalent" of his federal claim to the state courts in order to give the state courts "an opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim."). Therefore, as it is presented

to this Court, in a federal constitutional context, this claim is unexhausted, and because it is too late for Petitioner to go back to state court and exhaust it given the one year PCRA statute of limitations, the claim is now also procedurally defaulted.[5]  *See* Tome v. Stickman, 167 F. App'x 320, 324-45 (3d Cir. 2006) ("Tome is now time barred from filing a second PCRA petition presenting such a claim.) (citing 42 Pa. C.S.A. § 9545(b) (setting a one-year jurisdictional statute of limitations for PCRA actions).  Alternatively, to the extent that Petitioner's claim could be construed to have raised a federal constitutional issue, Petitioner has failed to demonstrate that his sentence violates the Eighth Amendment.[6]

In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court held that while the Eighth Amendment establishes that a "gross disproportionality principle is applicable

---

[5] The "procedural default" doctrine is "grounded in concerns of comity and federalism[.]" Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  It prohibits a federal habeas court from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is "independent" of the federal question and "adequate" to support the judgment.  *See, e.g.*, Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).  Petitioner has not demonstrated either standard.

[6] In instances where a state court has not adjudicated a claim on the merits, the deference normally required by § 2254 does not apply and the federal habeas court applies *de novo* review to pure legal questions and to mixed questions of law and fact.  *See* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009); Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005).  *See also* Williams v. Superintendent, SCI Greene, No. 11-cv-4319, 2012 WL 6057929, at *1 n.4 (E.D. Pa. Dec. 04, 2012) (applying de novo review to a claim of cumulative error that the state courts had not considered).  Even on de novo review of a habeas claim, the state court's factual determinations are still presumed to be correct, unless a petitioner rebuts them with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

to sentences for terms of years," id. at 72, "the precise contours of [the principle] are unclear, applicable only in the 'exceedingly rare' and 'extreme' cases." Id. at 73. In this case, the Superior Court affirmed Petitioner's sentence despite its length because of the multiple incidents of violence committed:

> Our review of the certified record reveals that Appellant was sentenced for multiple carjackings involving the use of a firearm, one of which resulted in the shooting of a victim in the face. The Commonwealth sought mandatory sentences, which the sentencing court noted totaled a minimum of forty years to a maximum of eighty years incarceration. The sentencing court had ample opportunity to observe Appellant as he also presided over the bench trial and accepted the pleas in the other three cases. The court confirmed on the record that he had reviewed the presentence report and victim impact statements. The court acknowledged the horror of having a complete stranger put a gun in one's face "for no better reason than personal greed." While Appellant expressed remorse for his behavior, apologized to his victims and their families, and acknowledged that his drug habit did not excuse his conduct, the trial court characterized his criminal behavior as "violent, vicious, and ugly." The sentencing court rejected any notion that substance abuse alone caused "this kind of behavior."

> We do not find the sentence, while lengthy, to be clearly unreasonable given the multiple incidents of personal violence perpetrated by Appellant. Furthermore, the court sufficiently articulated its reasons for imposing the sentence. Hence, relief is unwarranted on this ground.

(Resp't Ex. 24, ECF No. 12-7 at pp.15-17) (internal citations omitted).

Given the Superior Court's explanation for Petitioner's sentence, it is clear that this is not one of those rare or extreme cases where, based on Supreme Court precedent, a defendant's sentence would be considered grossly disproportionate to the crime of which he was convicted.[7] Thus, Petitioner's sentence is not unconstitutional under the Eighth Amendment.

---

[7] Andrade had shoplifted five videotapes worth $84.70 from one store and two weeks later shoplifted another four videotapes worth $68.84. A jury convicted him of two counts of petty theft and made a special finding that Andrade had three prior convictions for first-degree residential burglary. As a result, Andrade was sentenced under California's three strikes law to two consecutive terms of 25 years to life in prison. The Court upheld the sentence because Andrade was eligible for parole, *see* 538 U.S. at 74, distinguishing Andrade's case from Solem v.

### 3.  **Ineffective assistance of counsel**

Petitioner raises two ineffective assistance of counsel claims.  Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)."  Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)).  For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court."  Williams v. Taylor, 529 U.S. 362, 391 (2000).  Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different.  466 U.S. at 687.  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often

---

Helm, 463 U.S. 277, 281 (1983), in which the Court decided that the Eighth Amendment prohibited South Dakota from imposing a life sentence without possibility of parole on Helm for uttering a bad check for $100 (after six previous convictions for the nonviolent felonies of burglary, obtaining money by false pretenses, larceny, and third offense driving under the influence).  Petitioner's claim is far less compelling than the one rejected in Lockyer v. Andrade, and even farther from the claim sustained in Solem v. Helm.

be so, that course should be followed."  466 U.S. at 697.  In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding . . . .  In every case the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."  Id. at 696.

> **a.**  **Claim three:  Petitioner was denied his Sixth Amendment right to counsel when trial counsel induced Petitioner into believing that if he pleaded guilty he would receive a 10-20 year sentence.**

Petitioner's third claim is that his counsel was ineffective by inducing him to plead guilty on a promise that he would receive a 10 to 20 year sentence.  Petitioner litigated this claim in the state courts; thus, it is properly exhausted.  As to this claim, the trial court found as follows:

> . . . .  The defendant allege[s] that trial counsel, Rebecca Hudock, Esquire, promised him that if he pled to the instant cases, he would receive an aggregate sentence of 10 – 20 years for all four cases, or at least for the three cases.  The defendant further claims that he stated on the record that he was not promised anything in exchange for his pleas since he believed that his plea/trial counsel expected him to provide that answer so that the 10-20 year deal would be honored.

> During the hearing on the post-sentencing motions, Rebecca Hudock, Esquire testified that the Commonwealth did not make an offer, and she told the defendant that the Commonwealth did not make an offer, and was not going to make any offers.  Attorney Hudock testified that she never told the defendant that she had agreed to an offer of 10 to 20 years, since no such offer was ever made.  This court finds the testimony of Rebecca Hudock, Esquire to be credible.

> * * * *

> During the guilty plea colloquy, this Court asked the defendant whether there had been any promises or threats made to him in order to have him plead guilty to the charges, and the defendant replied that no promises or threats were made.  Therefore, this Court finds that trial counsel did not advise the defendant that he would receive a sentence of 10 – 20 years in exchange for a guilty plea.

(Resp't Ex. 21, ECF No. 12-4 at pp.41-42) (internal citations omitted).  On appeal, the

Superior Court found as follows:

> . . . . Appellant postulates that his pleas were involuntary because he relied
> on counsel's promise of an aggregate ten-to-twenty year sentence.  The record is
> unequivocal that there was no negotiated settlement in this case, and that all the
> pleas were general pleas.  Even Appellant told the court that there were "[n]o
> promises or threats."  However, Appellant now claims that he lied both in his
> written and oral guilty plea colloquies.
>
> There is no merit in the claim that Appellant lied under oath, even if he
> now alleges his lies were induced by counsel.  Appellant cannot use the guilty
> plea process as a sentencing-testing device.
>
> Furthermore, plea counsel Hudock testified that "I told [Appellant] there
> was no agreement and he would be throwing himself at the mercy of Judge
> Nauhaus and it would be up to him for the sentencing" and "I never once
> mentioned that I agreed to an offer of 10 to 20, never once in talking to him."  The
> trial court expressly found her testimony credible.  The court's credibility
> determination is very strongly supported by the certified record.  We defer to the
> court's credibility determination.  There is no arguable merit to Appellant's claim.
> Furthermore, Appellant fails to plead or prove any of the three **Pierce** prongs of
> ineffectiveness.

(Resp't Ex. 39, ECF No. 12-13 at pp.8-9) (internal citations and footnote omitted).

Because the state court rejected Petitioner's ineffective assistance of counsel claim on the

merits, this Court must review it under AEDPA's standard of review, which is set forth at 28

U.S.C. § 2254 and in section B, *supra*.

Under AEDPA, review is to proceed as follows.

> . . . . "[W]e must first identify the applicable Supreme Court precedent and
> determine whether it resolves the petitioner's claim."  *Id.* (citing *Matteo,* 171 F.3d
> at 888).  To do so, "it is not sufficient for the petitioner to show merely that his
> interpretation of Supreme Court precedent is more plausible than the state court's;
> rather, the petitioner must demonstrate that Supreme Court precedent requires the
> contrary outcome."  *Id.* (quoting *Matteo,* 171 F.3d at 888).  "If we determine that
> the state court decision is not 'contrary to' the applicable Supreme Court
> precedent, then we are required to advance to the second step in the analysis-
> whether the state court decision was based on an 'unreasonable application of'
> Supreme Court precedent."  *Id.* (citing *Matteo,* 171 F.3d at 888).  In performing

this inquiry, "we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Id.* (citing *Matteo,* 171 F.3d at 889). Rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable," *i.e.,* "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* (quoting *Matteo,* 171 F.3d at 890); *see also Price v. Vincent,* 538 U.S. 634, 636, 643, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because "[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.").

Hackett v. Price, 381 F.3d 281 (3d Cir. 2004) (citing Werts v. Vaughn, 228 F.3d 178, 196-97 (2000)).

First, the "clearly established Federal law" in which to analyze Petitioner's ineffective assistance claims is set forth in Strickland, *supra*, and the state court applied this standard to Petitioner's ineffectiveness claim.[8]  With regard to the first inquiry under AEDPA, Petitioner has not demonstrated that Strickland "requires the contrary outcome" with respect to his ineffectiveness claim, and therefore, the state courts' adjudication of this claim was not "contrary to" Strickland.  *See also* Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dipositive question, then, is whether the state courts' adjudication of Petitioner's ineffective assistance of counsel claim was an "unreasonable application" of Strickland.  It was

---

[8] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims, and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the difference merely reflects a stylistic choice on the part of state courts.  *See* Werts, 228 F.3d at 202–03.

not. In order to overcome AEDPA's standard of review, Petitioner must show that the state

courts' decision "cannot reasonably be justified under existing Supreme Court precedent[,]"

Matteo, 171 F.3d at 890, and, he falls far short of meeting this burden.

In cases where a defendant claims that he was induced to plead guilty based on the

ineffective assistance of counsel, the defendant must show "a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hill v. Lockhart, 474 U.S. 52, 59 (1985). The Third Circuit Court of Appeals has held that a

defendant "must make more than a bare allegation that but for counsel's errors he would have

pleaded not guilty and gone to trial." Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995),

superseded by statute on other grounds as stated in Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.

1996).

Based on the facts as determined by the state court, which this Court must presume as

correct unless rebutted by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), Petitioner

has not established prejudice. Specifically, this Court must presume that the Commonwealth

never made an offer and that Petitioner's counsel never promised him that he would receive a 10

to 20 year sentence in exchange for his guilty plea. More importantly, Petitioner does not state

that he would have gone to trial but for the alleged promise. Petitioner was clearly aware of his

potential sentence and elected to go forward with his guilty plea even after the judge informed

him of consecutive sentencing. *See* S.T. at pp.11-12 ("Sir, please be aware of the fact that if you

plead guilty or are found guilty, you can be sentenced consecutively. This is to say, I can make

the sentences run right after another, . . . . In so far as these three informations are concerned, it

is a total exposure or maximum period of incarceration of 142 years, with 25 to 50 of mandatory

time.") The state courts found that his plea was knowingly, voluntarily and intelligently entered

despite Petitioner's claims that he was lying at the time he made it. Because Petitioner has not

demonstrated prejudice necessary to satisfy the second half of the <u>Strickland</u> test, Petitioner has

simply not met his burden under 28 U.S.C. 2254(d) by showing that the state court's disposition

of this claim was an objectively unreasonable application of <u>Strickland</u>. *See*, *e.g.*, United States

v. Peppers, 273 F. App'x 155, 159 (3d Cir. 2008) (counsel was not constitutionally ineffective in

the plea process where Peppers failed to assert prejudice and "has made no contention that he

would not have entered his plea and would have insisted on going to trial if his counsel had

advised him that the ACCA arguably may not have applied"); Powell v. Meyers, 214 F. App'x

197, 200 (3d Cir.007) (§ 2254 petitioner's claim that plea counsel was constitutionally

ineffective in failing to advise him that his back-time sentence could not be served concurrently

with his instant sentence fails to establish prejudice where petitioner does not assert that he

would have insisted on going to trial had he known that it was legally impossible for his back-

time sentence to be served concurrently); United States v. Kauffman, 109 F.3d 186, 191 (3d

Cir.1997) (defendant alleging ineffective assistance in guilty plea context needs to present

evidence "sufficient to undermine our confidence that [the attorney] would have advised his

client to plead guilty rather than proceed to trial and that [the defendant] would have accepted

that advice"). Furthermore, the state court's decision was not an unreasonable determination of

the facts in light of the evidence presented. Relief will therefore be denied.

      **b. <u>Claim four: Petitioner was denied his Sixth Amendment right to counsel where trial counsel failed to file a motion to suppress his confession when he was not provided timely *Miranda* warnings.</u>**

Petitioner's fourth and final claim is that his counsel was ineffective in failing to file a motion to suppress his confession because he was not provided timely *Miranda*[9] warnings. Petitioner litigated this claim in the state courts; thus, it is properly exhausted. As to this claim the trial court found as follows:

> . . . The defendant alleges that his Miranda rights were not explained to him, he was under the influence of ecstasy and marijuana, and he did not comprehend what he was doing by making the statements or comprehend the substance of his statements. Trial counsel Rebecca Hudock, Esquire, and Michael Waltman, Esquire, testified that the defendant did discuss drug use prior to his confession but did not mention anything about Miranda warnings. There was a recorded oral confession and a Miranda waiver. During the taped confession, Detective Cecconello asked the defendant "Okay. Did you uh, did I read the Miranda warnings uh before you, your rights and uh responsibilities at this time, you have a right to an attorney you're agreeing to waive an attorney at this time." The defendant replied "Yes". Detective Cecconello then asked the defendant "And you're agreeing to speak with us on your own free will?" The defendant replied "Yes". The defendant's confession supplied details of his crimes, gave a lengthy narrative, and it was coherent. Trial Counsel listened to the defendant's confession and opined that the defendant did not seem to be under the influence of drugs and that any suppression motion would have been frivolous. . . .

(Resp't Ex. 21, ECF No. 12-4 at pp.42-43) (internal citations omitted). On appeal, the Superior Court stated:

> . . . . Appellant claims trial and plea counsel were ineffective for failing to file a motion to suppress his confession on the ground that he was not provided timely ***Miranda*** warnings. It is undisputed that Appellant received ***Miranda*** warnings, and signed a waiver before his confession. However, he now claims that he was under the influence of Ecstasy and marijuana and did not understand the ***Miranda*** warnings given to him when he signed the waiver form. . . . .
>
> \* \* \* \*
>
> . . . [I]n this case, after the hearing on the post-sentence motion the court found that "defendant's confession supplied details of his crimes, gave a lengthy narrative, and it was coherent." Trial counsel Waltman testified at the hearing that after listening to Appellant's taped statement, he decided that Appellant was "very coherent," answering police questions and giving a lengthy narrative which

---

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

matched the facts of the police report, and the victims' complaints, very closely. Counsel also knew that Appellant had signed a written waiver form, and gave another waiver on the recorded statement.

Accordingly, Appellant failed to prove that he lacked sufficient mental capacity to "know what he was saying and to have voluntarily intended to say it." We defer to the factual findings of the PCRA court which are supported by the record. The record supports the PCRA court's finding that Appellant failed to prove that his plea was involuntary.

Furthermore, trial counsel's testimony shows that he had a reasonable basis for the decision not to file a motion to suppress. Therefore Appellant's ineffectiveness claim also fails under the second prong of the Pierce test. The PCRA court properly found that counsel was not ineffective for not filing a motion to suppress. . . .

(Resp't Ex. 39, ECF No. 12-13 at pp.9-12) (internal citations omitted).

Like in the prior claim, the state court applied the <u>Strickland</u> standard to this claim of ineffective assistance, and Petitioner has not demonstrated that <u>Strickland</u> "requires the contrary outcome." Therefore, the state courts' adjudication of this claim was not "contrary to" <u>Strickland</u>. *See* <u>Werts</u>, *supra*.

Neither was the state courts' adjudication of this claim an "unreasonable application" of <u>Strickland</u> or an unreasonable determination of the facts. Again, this Court must presume that the state court's factual findings are correct unless rebutted by "clear and convincing" evidence, which Petitioner has not demonstrated. Given the state court's determination that Petitioner was "very coherent" at the time he waived his rights and confessed, Petitioner is unable to demonstrate any prejudice on the part of his counsel for failing to file a motion to suppress because it is clear that such motion would have been denied. Thus, Petitioner has failed to meet his burden under both 28 U.S.C. § 2254(d)(1)-(2), and relief will be denied.

**D.  Certificate of Appealability**

A court should issue a Certificate of Appealability where a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). We find that jurists of reason would not find it debatable whether Petitioner states a valid claim of the denial of a constitutional right, and jurists of reason would not find debatable the issue of whether this Court were correct in concluding that the Petition does not present any claims upon which habeas relief may be granted.  Therefore, the Court will deny a Certificate of Appealability.  A separate Order will issue.

Dated:  July 1, 2016.

Lisa Pupo Lenihan
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

XAVIER VENIAL CLAY,      )
     )     Civil Action No. 14 – 736
         Petitioner,    )
     )
       v.        )     Magistrate Judge Lisa Pupo Lenihan
     )
JON FISHER and THE ATTORNEY   )
GENERAL OF THE STATE OF      )
PENNSYLVANIA,      )
     )
         Respondents.   )

## ORDER

**AND NOW**, this 1st day of July, 2016, and in accordance with the Court's Memorandum Opinion, **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 3) is denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case closed.

**AND IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if Petitioner wishes to appeal from this Order a notice of appeal, as provided in Fed. R. App. P. 3, must be filed with the Clerk of Court, United States District Court, at 700 Grant Street, Room 3110, Pittsburgh, PA 15219, within thirty (30) days.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

22

Cc:   Xavier Venial Clay
JH 7221
S.C.I. Smithfield
1120 Pike Street
P.O. Box 999
Huntingdon, PA  16642

Counsel of record
Via CM/ECF electronic mail